**UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF NEW
YORK**

| | |
|---|---|
| TERRI VAKIL, | ) |
| | ) |
| Plaintiff, | ) Case No. _____ |
| | ) |
| v. | ) JURY TRIAL DEMANDED |
| | ) |
| THE AQUANTIA CORPORATION, LIP-BU TAN, FARAJ AALAEI, DMITRY AKHANOV, DR. BAMI BASTANI, KEN PELOWSKI, GEOFFREY RIBAR, SAM SRINIVASAN, and ANDERS SWAHN, | ) ) ) ) ) |
| | ) |
| Defendants. | ) |
| | ) |

**COMPLAINT FOR VIOLATION OF THE SECURITIES EXCHANGE ACT OF 1934**

Plaintiff, by her undersigned attorneys, for this complaint against defendants, alleges upon personal knowledge with respect to herself, and upon information and belief based upon, *inter alia*, the investigation of counsel, as to all other allegations herein, as follows:

**NATURE OF THE ACTION**

1. This is an action brought by Plaintiff against the Aquantia Corporation ("Aquantia" or the "Company") and the members of the Company's board of directors (collectively referred to as the "Board" or the "Individual Defendants" and, together with Aquantia, the "Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a) respectively, and United States Securities and Exchange Commission ("SEC") Rule 14a-9, 17 C.F.R. § 240.14a-9. Plaintiff's claims arise in connection with the proposed acquisition of Aquantia by Marvell Technology Group, Ltd. and Antigua

Acquisition Corp., (collectively, "Marvell") (the "Proposed Transaction").

2. On May 6, 2019, Aquantia entered into an agreement and plan of merger (the "Merger Agreement"), whereby stockholders of Aquantia common stock will receive $13.25 in cash for each share of Aquantia stock they own (the "Merger Consideration").

3. On May 29, 2019, in order to convince Aquantia's public common stockholders to vote in favor of the Proposed Transaction, the Defendants authorized the filing of a materially incomplete and misleading Schedule 14(a) Solicitation/Recommendation Statement (the "Proxy") with the Securities and Exchange Commission ("SEC").

4. In particular, the Proxy contains materially incomplete and misleading information concerning: (i) financial projections and related analyses completed by Aquantia's financial advisor with respect to the Proposed Transaction, Barclays Capital Inc. ("Barclays"); (ii) the data and inputs underlying the financial valuation performed by Barclays; and, (iii) potential conflicts of interest on the part of Barclays.

5. The special meeting of Aquantia's stockholders to vote on the Proposed Transaction is going to be scheduled soon, and consummation of the Proposed Transaction will follow thereafter (the "Stockholder Vote"). It is therefore imperative that the material information that has been omitted from the Proxy is disclosed prior to the Stockholder Vote so Aquantia's stockholders can properly exercise their corporate voting rights.

6. For these reasons, and as set forth in detail herein, Plaintiff asserts claims against Defendants for violations of Sections 14(a) and 20(a) of the Exchange Act and Rule 14a-9. Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction unless and until the material information discussed below is disclosed to Aquantia's public common stockholders sufficiently in advance of the upcoming stockholder vote or, in the

event the Proposed Transaction is consummated, to recover damages resulting from the Defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

7.  This Court has jurisdiction over all claims asserted herein pursuant to Section 27 of the 1934 Act because the claims asserted herein arise under Sections 14(a) and 20(a) of the 1934 Act and Rule 14a-9.

8.  Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over each Defendant by this Court permissible under the traditional notions of fair play and substantial justice.  "Where a federal statute such as Section 27 of the [Exchange] Act confers nationwide service of process, the question becomes whether the party has sufficient contacts with the United States, not any particular state." *Sec. Inv'r Prot. Corp. v. Vigman*, 764 F.2d 1309, 1315 (9th Cir. 1985).  "[S]o long as a defendant has minimum contacts with the United States, Section 27 of the Act confers personal jurisdiction over the defendant in any federal district court." *Id.* at 1316.

9.  Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as 28 U.S.C. § 1391, because Defendants are found or are inhabitants or transact business in this District.  Indeed, Aquantia's common stock trades on the New York Stock Exchange, which is also headquartered in this District. *See, e.g., United States v. Svoboda*, 347 F.3d 471, 484 n.13 (2d Cir. 2003) (collecting cases). Additionally, Aquantia's counsel for the Proposed Transaction, Cooley LLP, is located in this District at 55 Hudson Yards, New York, New York, 10001-2157.

**PARTIES**

10.    Plaintiff Vakil is, and has been continuously throughout all times relevant hereto, the owner of Aquantia common stock.

11.    Defendant Aquantia is a Delaware corporation and maintains its principal executive office at 91 East Tasman Drive, Suit 100, San Jose, California, 95134. Aquantia is a "leader in the design, development and marketing of advanced high speed communications integrated circuits for Ethernet connectivity in the data center, enterprise infrastructure, access and automotive markets." Proxy, 14. The Company's common stock trades on the New York Stock Exchange under the ticker symbol "AQ."

12.    Individual Defendant Faraj Aalaei ("Aalaei") is and has been President and Chief Executive Officer and a director of Aquantia since January 2009.

13.    Individual Defendant Lip-Bu Tan ("Tan") is and has been lead director of Aquantia.

14.    Individual Defendant Dmitry Akhanov ("Akhanov") is and has been a director of Aquantia.

15.    Individual Defendant Dr. Bami Bastani ("Bastani") is and has been a director of Aquantia.

16.    Individual Defendant Ken Pelowski ("Pelowski") is and has been a director of Aquantia.

17.    Individual Defendant Geoffrey Ribar ("Ribar") is and has been an independent director of Aquantia.

18.    Individual Defendant Sam Srinivasan ("Srinivasan") is and has been a director of Aquantia.

19. Individual Defendant Anders Swahn ("Swahn") is and has been an independent director of Aquantia.

20. The defendants identified in paragraphs 12 through 19 are collectively referred to herein as the "Board" or the "Individual Defendants," and together with Aquantia, the "Defendants."

## SUBSTANTIVE ALLEGATIONS

**Background of the Company and the Proposed Transaction**

21. According to its website, Aquantia was founded in 2004 with a focus on "revolutionizing Ethernet and accelerating connectivity." Aquantia also claims to be one of the first companies to compete in the data cloud market and, with respect to cloud data storage, to work on increased mobility and data consolidation.

22. Indeed, on May 6, 2019, the Board caused the company to enter into the Merger Agreement with Marvell. Pursuant to the terms of the Merger Agreement, Marvell, upon the terms and subject to the conditions set forth in the Merger Agreement, will pay Aquantia's stockholders $13.25 in cash for each share of Aquantia that they hold.

23. According to the May 6, 2019 press release announcing the Proposed Transaction:

> SANTA CLARA, Calif. and SAN JOSE, Calif. – May 6, 2019 – Marvell Technology Group, Ltd. (NASDAQ: MRVL), a leader infrastructure semiconductor solutions, and Aquantia, Corp. (NYSE: AQ), a leader in Multi-Gig Ethernet connectivity, today announced a definitive agreement, approved by the boards of directors of both companies, under which Marvell will acquire all outstanding shares of Aquantia common stock in exchange for consideration of $13.25 per share in cash.
>
> The acquisition of Aquantia complements Marvell's portfolio of copper and optical physical layer product offerings and extends its position in the Multi-Gig 2.5G/5G/10G Ethernet segments. In particular, Aquantia's innovative Multi-gig automotive PHYs, coupled with

Marvell's industry-leading gigabit PHY and secure switch products, creates the broadest and most advanced range of high-speed in-car networking solutions in the world. This unique combination accelerates Marvell's vision for the future of automotive networking with speeds necessary to enable level 4 and 5 autonomous driving….

"Our acquisition of Aquantia will fuel Marvell's leadership in the transformation of the in-car network to high-speed Ethernet over the next decade," said Matt Murphy, president and CEO of Marvell. "At the same time, Aquantia extends our reach in the rapidly emerging Multi-Gig segment of network infrastructure and creates a leading end-to-end Ethernet connectivity portfolio."

**Transaction Structure and Terms**

Under the terms of the definitive agreement, Marvell will pay Aquantia's stockholder $13.25 per share in cash. This represents approximately $452 million in transaction value after adjusting for net cash on Aquantia's balance sheet. Marvell intends to finance the transaction and is expected to close by the end of CY2019, subject to regulatory approval as well as other customary closing conditions, including the adoption by Aquantia's stockholders of the merger agreement.

In connection with the execution of the definitive agreement, certain stockholders of Aquantia, together holding approximately 17 percent of the outstanding shares of common stock of Aquantia, have agreed to vote their shares in favor of the transaction under a voting and support agreement.

**The Proxy Omits Material Information**

24. On May 29, 2019, Defendants filed a materially incomplete and misleading Proxy with the SEC. The special meeting of Aquantia stockholders to vote on the Proposed Transaction is forthcoming. The Individual Defendants were obligated to carefully review the Proxy before it was filed with the SEC and disseminated to the Company's stockholders to ensure that it did not contain any material misrepresentations or omissions. However, the Proxy misrepresents or omits material information that is necessary for the Company's stockholders to make an informed voting decision in connection with the Proposed Transaction.

25. The Proxy fails to provide enough information regarding financial projections, inputs and assumptions for various financial valuations and about Barclays' potential conflicts of interest.

26. In particular, the Proxy fails to disclose: (a) all line items used to calculate EBITDA; (b) a reconciliation of all non-GAAP to GAAP metrics; (c) with respect to the *Discounted Cash Flow Analysis*: (i) the projected post-tax unlevered free cash flows, (ii) the estimated terminal value, (iii) the reasons why a range of exit multiples was used with respect to adjusted EBITDA, (iv) the reasons why or the individual inputs and assumptions used underlying the range of discount rates and perpetuity growth rates applied, (v) the existence of net debt, and (vi) the number of (fully diluted) shares of Aquantia common stock; (d) with respect to the *Equity Research Target Prices Review*, the price targets (and sources of said targets) for Aquantia; (e) with respect to the *Transaction Premium Analysis*, the transactions observed in the analysis and the premiums paid in each of the transactions; and (f) with respect to potential conflicts of interest related to Barclays, details of the work that Barclays performed for Aquantia prior to work related to the Proposed Transaction and the fees paid to Barclays for the aforementioned work.

27. With respect to the disclosures related to EBITDA, Defendants' failure to disclose all line items used to calculate renders the Proxy materially misleading.

28. With respect to the reconciliation of all non-GAAP to GAAP metrics, Defendants' failure to reconcile all non-GAAP to GAAP metrics similarly renders the Proxy materially misleading.

29. With respect to the *Discounted Cash Flow Analysis*, investors are concerned, perhaps above all else, with the projections and cash flows of the companies in which they invest. Under sound corporate finance theory, the market value of a company should be premised on the

expected unlevered free cash flows of the corporation. Accordingly, the question that the Company's stockholders need to answer in determining whether to vote in favor of the Proposed Transaction is clear:  Is the Merger Consideration fair compensation given Aquantia's projected cash flows?  Without the line items underlying Aquantia's unlevered free cash flows the Company's stockholders will not be able to properly assess this critical question and evaluate the fairness of the Merger Consideration.

30. If a Proxy discloses financial projections and valuation information, such projections must be complete and accurate.  The question here is not the duty to speak, but liability for not having spoken enough.  With regard to future events, uncertain figures, and other so-called soft information, a company may choose silence or speech elaborated by the factual basis as then known—but it may not choose half-truths.  *See Campbell v. Transgenomic, et al.*, No. 18-2198 (8th Cir., March 1, 2019) (noting that "half-truths" are actionable misrepresentations under securities laws and collecting cases).  Accordingly, Defendants have disclosed some of the information related to the projections relied upon by Barclays, but have omitted crucial line items and reconciliations. Thus, Defendants' omission renders the projections disclosed in the Proxy misleading.

31. With respect to Barclays' *Discounted Cash Flow Analysis*, the Proxy is also materially misleading and incomplete because it fails to disclose the inputs and assumptions underlying the selection of the range of discount rates and the terminal growth rates underlying the selection of terminal multiples.  Moreover, Barclays' *Discounted Cash Flow Analysis* is based on unlevered free cash flows, but omits the critical line items as discussed above, nor does the *Discounted Cash Flow Analysis* disclose the fully diluted shares outstanding of Aquantia.

32. These key inputs are material to Aquantia stockholders, and their omission

renders the summary of Barclays *Discounted Cash Flow Analysis* incomplete and misleading. As one highly-respected law professor explained regarding these crucial inputs, in a discounted cash flow analysis a banker takes management's forecasts, and then makes several key choices "each of which can significantly affect the final valuation." Steven M. Davidoff, Fairness Opinions, 55 Am. U.L. Rev. 1557, 1576 (2006). Such choices include "the appropriate discount rate, and the terminal value…" *Id.* As Professor Davidoff explains:

> *There is substantial leeway to determine each of these, and any change can markedly affect the discounted cash flow value. For example, a change in the discount rate by one percent on a stream of cash flows in the billions of dollars can change the discounted cash flow value by tens if not hundreds of millions of dollars….This issue arises not only with a discounted cash flow analysis, but with each of the other valuation techniques. This dazzling variability makes it difficult to rely, compare, or analyze the valuations underlying a fairness opinion **unless full disclosure is made of the various inputs in the valuation process, the weight assigned for each, and the rationale underlying these choices**. The substantial discretion and lack of guidelines and standards also makes the process vulnerable to manipulation to arrive at the "right" answer for fairness. This raises a further dilemma in light of the conflicted nature of the investment banks who often provide these opinions.*

*Id.* at 1577-78 (emphasis added). Without the above-mentioned information, Aquantia's stockholders cannot meaningfully evaluate for themselves the reliability of Barclays *Discounted Cash Flow Analysis*, make a meaningful determination of whether the implied equity value ranges reflect the true value of the Company or was the result of an unreasonable judgment by Barclays, and make an informed decision regarding whether to vote in favor of the Proposed Transaction.

33.     With respect to the *Equity Research Target Prices Review*, Barclays analysis is also materially misleading. Specifically, it fails to disclose the critical price targets for Aquantia or the sources thereof.

34. With respect to the Transaction Premium Analysis, the *Transaction Multiples Analysis* prepared by Barclays in the Proxy is similarly insufficient and materially misleading. Specifically, it fails to disclose which transactions were observed by Barclays and what premiums were paid in those transactions.

35. Finally, with respect to potential conflicts of interest related to Barclays, details of the work that Barclays performed for Aquantia prior to work related to the Proposed Transaction and the fees paid to Barclays for the aforementioned work.

36. Defendants' failure to provide the foregoing material information renders the statements in the Proxy false and/or materially misleading.

37. In sum, the omission of the above-referenced information renders the Proxy materially incomplete and misleading, in contravention of the Exchange Act. Absent disclosure of the foregoing material information prior to the upcoming stockholder vote concerning the Proposed Transaction, Plaintiff will be unable to make an informed decision regarding whether to vote their shares in favor of the Proposed Transaction, and they are thus threatened with irreparable harm, warranting the injunctive relief sought herein.

## CAUSES OF ACTION

### COUNT I

**(Against All Defendants for Violations of Section 14(a) of the Exchange Act and Rule 14a-9)**

38. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

39. Section 14(a)(1) of the Exchange Act makes it "unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the

Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any Proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 78l of this title." 15 U.S.C. § 78n(a)(1).

40.     Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that Proxy communications shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

41.     The omission of information from a Proxy will violate Section 14(a) and Rule 14a-9 if other SEC regulations specifically require disclosure of the omitted information.

42.     Defendants have issued the Proxy with the intention of soliciting the Company's common stockholders' support for the Proposed Transaction. Each of the Individual Defendants reviewed and authorized the dissemination of the Proxy, which fails to provide critical information regarding, amongst other things: (i) complete and accurate financial projections for Aquantia; (ii) complete and accurate valuation analyses performed by Barclays in support of its fairness opinion; and (iii) potential conflicts of interest on the part of Barclays with respect to the Proposed Transaction.

43.     In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading. Each of the Individual Defendants, by virtue of their roles as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a). The Individual Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were

misstated or omitted from the Proxy, but nonetheless failed to obtain and disclose such information to the Company's stockholders although they could have done so without extraordinary effort.

44.     The Individual Defendants knew or were negligent in not knowing that the Proxy is materially misleading and omits material facts that are necessary to render it not misleading. The Individual Defendants undoubtedly reviewed and relied upon most if not all of the omitted information identified above in connection with their decision to approve and recommend the Proposed Transaction; indeed, the Proxy states that Barclays reviewed and discussed its financial analyses with the Board, and further states that the Board considered the financial analyses provided by Barclays, as well as its fairness opinion and the assumptions made and matters considered in connection therewith. Further, the Individual Defendants were privy to and had knowledge of the projections for the Company and the details surrounding the process leading up to the signing of the Merger Agreement. The Individual Defendants knew or were negligent in not knowing that the material information identified above has been omitted from the Proxy, rendering the sections of the Proxy identified above to be materially incomplete and misleading. Indeed, the Individual Defendants were required to, separately, review Barclays analyses in connection with their receipt of the fairness opinions, question Barclays as to its derivation of fairness, and be particularly attentive to the procedures followed in preparing the Proxy and review it carefully before it was disseminated, to corroborate that there are no material misstatements or omissions.

45.     The Individual Defendants were, at the very least, negligent in preparing and reviewing the Proxy. The preparation of a Proxy by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence. The Individual

Defendants were negligent in choosing to omit material information from the Proxy or failing to notice the material omissions in the Proxy upon reviewing it, which they were required to do carefully as the Company's directors. Indeed, the Individual Defendants were intricately involved in the process leading up to the signing of the Merger Agreement and preparation and review of the Company's financial projections.

46. Aquantia is also deemed negligent as a result of the Individual Defendants' negligence in preparing and reviewing the Proxy.

47. The misrepresentations and omissions in the Proxy are material to Plaintiff, who will be deprived of their right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the Stockholder Vote. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## COUNT II

### (Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act)

48. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

49. The Individual Defendants acted as controlling persons of Aquantia within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers and/or directors of Aquantia, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Proxy filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and

misleading.

50. Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

51. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same. The Proxy contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction. They were thus directly involved in preparing this document.

52. In addition, as the Proxy sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement. The Proxy purports to describe the various issues and information that the Individual Defendants reviewed and considered. The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

53. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

54. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9 by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

55.     Plaintiff has no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A.      Preliminarily enjoining Defendants and all persons acting in concert with them from proceeding with the Stockholder Vote or consummating the Proposed Transaction, unless and until the Company discloses the material information discussed above which has been omitted from the Proxy;

B.      Directing the Defendants to account to Plaintiff for all damages sustained as a result of their wrongdoing;

C.      Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

D.      Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

Dated: June 5, 2019                                  **Monteverde & Associates PC**

By:  /s/ Juan E. Monteverde
Juan E. Monteverde (JM-8169)
The Empire State Building
350 Fifth Avenue, Suite 4405
New York, NY 10118
Tel:(212) 971-1341
Fax:(212) 202-7880
Email: jmonteverde@monteverdelaw.com

*Attorneys for Plaintiff*

**OF COUNSEL:**

**ADEMI & O'REILLY, LLP**
Guri Ademi
3620 East Layton Avenue
Cudahy, Wisconsin 53110
Tel: (414) 482-8000
Fax: (414) 482-8001
Email: gademi@ademilaw.com

*Attorneys for Plaintiff*